Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL V**

| Elesma Oliveras Sifre<br><br>**Apelante**<br><br>V.<br><br>Berthold Meltz Narváez, Betsilda Collazo Batista, Sociedad Legal de Gananciales compuesta por Berthold Meltz y Betsilda Collazo<br><br>**Apelados** | KLAN202500296 | **APELACIÓN**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: GB2021CV00472<br><br>Sobre: Daños, Daños por Vicios de Construcción |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de mayo de 2025.

El 8 de abril de 2025, la Sra. Elesma Oliveras Sifre (señora Oliveras Sifre o apelante) compareció ante nos mediante un recurso de *Apelación* y solicitó la revocación de una *Sentencia* que se emitió el 24 de enero de 2025 y se notificó el 28 de igual mes y año por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). Mediante el aludido dictamen, el TPI desestimó la *Demanda* instada e impuso una sanción de cinco mil ($5,000.00) dólares por temeridad a la parte apelante.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

**I.**

El 16 de julio de 2021, la señora Oliveras Sifre presentó una *Demanda* en contra del Sr. Berthhold Meltz Narváez, la Sra. Betsilda Collazo Batista y la Sociedad Legal de Gananciales compuesta por

ambos (la parte apelada).[1] Allí, alegó que su residencia estaba ubicada en la Urb. Mansiones de Santa Paul en Guaynabo, Puerto Rico y que la parte apelada era su vecina. Sostuvo que, entre la colindancia de ambas propiedades existía un muro que pertenecía a la parte apelada que se encontraba en peligro de colapsar hacia su propiedad, en específico hacia el área de la piscina.

Indicó que, el peligro existente con dicho muro no tan solo afectaba la propiedad, sino también a la seguridad de las personas que utilizaran la piscina. Señaló que, había intentado en varias ocasiones solucionar la situación con la parte apelada. No obstante, manifestó que, la parte apelada se había negado a realizar la reparación requerida y necesaria. Adujo que, ello le ha causado angustias y traumas mentales. A tales efectos, solicitó que se ordenara la reparación del muro, así como una partida por angustias mentales, más el reembolso de los gastos incurridos en el uso de agrónomo, ingeniero y contratista, los cuales ascendían a la cantidad de seiscientos cincuenta ($650.00) dólares.

El 12 de julio de 2022, la parte apelada presentó su *Contestación a la Demanda*.[2] En lo pertinente, alegó que en el pasado las partes habían tratado de resolver la controversia relacionada al muro, pero que no hubo éxito. No obstante, sostuvo que, de los planos originales de la propiedad, surge que el referido muro podría estar total o parcialmente dentro de la propiedad de la apelante. Así, indicó que de buena fe y sin admitir titularidad, ofreció a la señora Oliveras Sifre reparar la pared y dividir los gastos entre ambas familias, pero que esta se negó rotundamente.

Tras varios trámites procesales, los cuales no son necesarios pormenorizar, el 24 de enero de 2025 y notificada el 28 de igual mes

---

[1] Véase, págs. 192-194 del apéndice del recurso.
[2] Id., págs. 195-200.

y año, el TPI dictó su *Sentencia*.[3] Mediante esta, tras aquilatar la prueba testifical y documental desfilada, realizó las siguientes determinaciones de hechos:

1. Los demandantes son vecinos colindantes de la Calle A, Urbanización Mansiones de Santa Paula, siendo la propiedad de la demandante la A-9; y la de los demandados la A-8.

2. Existe una verja de concreto con alambre eslabonado que colinda entre ambas propiedades.

3. Ninguna de las partes es dueño original de sus respectivas casas;

4. Al momento de la parte demandante mudarse a su propiedad ya los demandados vivían en su casa localizada al lado de la demandante;

5. Al momento de la parte demandante mudarse ya el muro objeto de controversia y la piscina de la demandante estaban construidos;

6. El primer testigo de la demandante lo fue el Sr. Abiud Reyes Rivera;

7. El Testigo Reyes Rivera fue presentado como perito agrimensor y sus cualificaciones fueron aceptadas por la parte demandada, por lo que fue cualificado como perito agrimensor;

8. El Agrimensor Reyes Rivera declaró que fue contratado por la parte demandante para el deslinde de su colindancia con el solar #8, propiedad de los demandados;

9. Los trabajos contratados fueron realizados el 16 de septiembre de 2016, donde éste llevó a cabo un levantamiento planimétrico de la calle Jaime Rodríguez y la Calle A localizando sus ejes, los muros en el solar al igual que las estructuras existentes;

10. El perito Reyes Rivera utilizó el plano de inscripción de la urbanización y la escritura de propiedad de la demandante;

11. El perito Reyes Rivera declaró que preparó un plano de condiciones existentes, donde se identificaron los rumbos y distancias de los lados del solar A-9 (propiedad de la demandante) así como su cabida;

12. La parte demandante presentó, y este Tribunal aceptó sin objeción como Exhibit 1, el informe del Agrimensor Reyes Rivera con su Anejo 1 que representaba el plano de condiciones existentes;

---

[3] Id., págs. 2-12.

13. El informe del perito tiene fecha de 9 de noviembre de 2016 y le fue entregado a la demandante en o alrededor de dicha fecha;

14. En el referido informe, al igual que en su examen directo, el perito Reyes Rivera estableció que la pared en controversia estaba dentro de la propiedad de los demandados;

15. Sin embargo, en el contra-interrogatorio el perito Reyes Rivera reconoció que su propio estudio y plano indicaban que la pared en controversia no estaba totalmente dentro de la propiedad de los demandados y que se equivocó al indicar en su informe que dicha pared estaba dentro de la propiedad de los demandados;

16. El segundo testigo de la demandante fue ella misma, Elesma Oliveras Sifre;

17. La demandante no tuvo nada que ver con el diseño ni la construcción de la pared objeto de la controversia;

18. En el año 2012 fue cuando la demandante notó, por primera vez, que la pared estaba inclinada;

19. A raíz de lo anterior, la demandante contrató varios profesionales para que la asesoraran sobre el estado de la pared;

20. Entre los profesionales consultados estaban ingenieros y al menos un agrimensor de nombre Abiud Reyes Rivera;

21. Para el año 2022 la demandante midió la inclinación del muro y la misma fue tan poca que no le dio importancia

22. A través de los años, la demandante le tuvo que cambiar el forro interno de su piscina, al menos, dos veces, porque el nivel del agua estaba bajando. Específicamente, la demandante notó que el agua de la piscina estaba percolando;

23. Después que se cambió el forro de la piscina, por segunda vez, la demandante NO volvió a observar el agua de la piscina bajando de nivel;

24. Luego de la radicación de la demanda tanto la demandante como sus familiares y amigos han utilizado la piscina;

25. Luego de la radicación de la demanda la demandante veía que seguía pasando el tiempo y chequeando el muro y decidió utilizar la piscina, porque no creía que se iba a derrumbar así porque sí;

26. La demandante no declaró sobre las condiciones de peligrosidad de la pared en controversia;

27. La demandante reconoció que, previo a la radicación de la demanda, los demandados le ofrecieron pagar la mitad de las reparaciones de la pared;

28. La demandante se negó a lo ofrecido por los demandados, por entender que la pared era totalmente de los demandados;

29. La demandante nunca visitó a ningún psicólogo ni psiquiatra relacionado con las alegaciones de la demanda;

30. La parte demandada presentó su primer testigo la Sra. Betsilda Collazo;

31. Durante el año 2021, fecha de la radicación de la demanda, la Sra. Collazo vivía casada con el Sr. Berthold Meltz y su hija menor en la Calle A, Urbanización Mansiones de Santa Paula A-8;

32. Actualmente, la Sra. Collazo y el Sr. Meltz están divorciados;

33. La Sra. Collazo reside en Guaynabo, sin embargo, comenzó a vivir en la Urb. Santa Paula desde el año 1996;

34. La Sra. Collazo conoce a la demandante por ser vecina de ella mientras vivía en la Urb. Santa Paula;

35. Ambas se conocen hace años y su relación siempre fue muy buena y cordial hasta la radicación de la demanda;

36. Previo a la radicación de la demanda, la Sra. Collazo y su entonces esposo el Sr. Meltz le ofrecieron pagar la mitad del costo de la reparación de la pared colindante;

37. Posterior a la radicación de la demanda, la Sra. Collazo no tiene comunicación con la demandante;

38. La Sra. Collazo no intervino en el diseño ni construcción del muro en controversia, ya que el mismo estaba construido al ella adquirir la propiedad con su entonces marido;

39. El segundo testigo anunciado por la parte demandada era el Sr. Berthold Meltz, quien se encontraba en sala, sin embargo, durante el juicio éste presentó una carta del Dr. Héctor Cott Dorta, Psiquiatra, Lic. 14012, la cual indicaba que tenía bajo su cargo al Sr. Meltz y que éste no estaba capacitado para entrar en cualquier proceso judicial hasta lograr estabilizar sus síntomas. La parte demandante se expresó al respecto y decidió, libre y voluntariamente, sin reserva de Derecho alguna, no oponerse a la solicitud del Sr. Meltz de no declarar.

A base de estos hechos y el derecho aplicable determinó que, en primer lugar, la señora Oliveras Sifre nunca logró demostrar su alegación de que el muro en controversia era propiedad de la parte apelada y que estos tuvieran la obligación de repararla. Así, expresó que el informe pericial demostró que la mencionada pared estaba

parcialmente dentro de la propiedad de la apelante, pero que nunca tuvo ante si prueba documental que demostrara las condiciones físicas del mismo. Manifestó que, tampoco se presentó prueba en cuanto el alegado estado de colapso y condición progresiva de la pared, ni sobre cualquier causa que pudiera haber generado dicho estado. Además, indicó que no tuvo ante sí prueba documental o testifical en cuanto a las alegaciones de daños a la propiedad, ni sobre las alegadas angustias y traumas mentales.

Por otra parte, el TPI sostuvo que, desde noviembre 2016, fecha en la que el Agrimensor Abiud Reyes Rivera (Agrimensor) preparó el estudio de la situación de la pared, la señora Oliveras Sifre podía percatarse que la pared no estaba totalmente dentro de la propiedad de la parte apelada, sin embargo, presentó el pleito de epígrafe alegando que estos tenían la obligación de repararla en su totalidad. A tales efectos, evaluada la prueba presentada en el juicio, concluyó que la apelante no logró demostrar los elementos de su reclamación. De igual forma, determinó que la conducta de la apelante desde la radicación del pleito hasta el final de este fue temeraria. Por lo cual, declaró No Ha Lugar la *Demanda* y le impuso a la señora Oliveras Sifre una sanción de cinco mil ($5,000.00) dólares por temeridad.

Inconforme, el 12 de febrero de 2025, la apelante presentó una *Moción Solicitando Reconsideración al Smparo de la Regla 47 de Procedimiento Civil, así como Determinaciones Adicionales de Hecho y de Derecho al Amparo de la Regla 43.1 de Procedimiento Civil.*[4] Atendido el escrito, el 10 de marzo de 2025 y notificado el 11 de igual mes y año, el TPI la declaró No Ha Lugar.[5] Aún inconforme, el 8 de abril de 2025, la señora Oliveras Sifre presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

---

[4] Id., págs. 13-22.
[5] Id., pág. 32.

**Erró el Tribunal de Primera Instancia (TPI) al desestimar la demanda incoada e imponer $5,000.00 en sanciones por temeridad.**

Cabe precisar que, la apelante incluyó una transcripción de la prueba oral de una vista que se celebró el 22 de noviembre de 2024 como parte de su apéndice. Así pues, atendido el recurso, el 9 de abril de 2025, emitimos una *Resolución* concediéndole a la parte apelante hasta el 15 de abril de 2025, para expresar las razones por lo cual entendía que la transcripción de la prueba oral era indispensable, ya que el error levantado no tenía que ver con la apreciación de la prueba. El 14 de abril de 2025, la apelante presentó su *Moción en cumplimiento de Orden* afirmando que la transcripción no era indispensable y que la misma fue incluida en el escrito de *Apelación,* ya que la misma fue utilizada en la moción de reconsideración ante el TPI.

A tales efectos, el 21 de abril de 2025, emitimos una *Resolución* en la cual dimos por cumplida la *Orden* del 9 de abril de 2025. En consecuencia, ordenamos a la secretaria de este Tribunal el desglose de las cuatro (4) copias de las transcripciones. A su vez, concedimos a la parte apelada un término hasta el 12 de mayo de 2025, para que presente su alegato en oposición. Vencido el término para ello, sin que la parte apelada presentara su postura en cuanto al recurso, damos por perfeccionado el recurso y procedemos a resolver el asunto ante nos. *Veamos.*

## II.

### -A-

El Art. 1536 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10801, establece que la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo.[6] A base de ello, el

---

[6] Previo a iniciar nuestra discusión es menester señalar que, dado las circunstancias de la controversia de epígrafe, los preceptos aplicables son aquellos del Código Civil de 2020 y no los del Código Civil derogado de 1930. A tales efectos, utilizaremos los artículos correspondientes del Código Civil vigente.

Tribunal Supremo de Puerto Rico ha establecido que es indispensable probar los siguientes elementos para que proceda la reparación de un daño: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado; y (3) el acto u omisión, el cual tiene que ser culposo o negligente. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 768 (2023).

El término "daño" ha sido definido múltiples veces por el Tribunal Supremo como todo menoscabo material o moral causado en contravención de una norma jurídica, que sufre una persona y del cual haya de responder otra. *López v. Porrata Doria*, 169 DPR 135, 151 (2006). Por otro lado, la culpa o negligencia consiste en "la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976-977 (2021). Por otra parte, en nuestro ordenamiento jurídico es la parte demandante quien tiene el peso de probar sus alegaciones mediante la presentación y preponderancia de prueba a base del criterio de probabilidad. *Colón v. Lotería*, 167 DPR 625, 656 (2006).

**-B-**

La Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, establece que "[e]n caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. […]". Lo anterior quiere decir que, si el tribunal sentenciador determina la existencia de temeridad, la imposición de honorarios es imperativa. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 147 (2022).

En términos generales, la temeridad es aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 925 (2012). El propósito de la imposición de honorarios de abogado en casos de temeridad es penalizar a un litigante perdidoso que, por su "testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir innecesariamente las molestias, los gastos e inconvenientes de un pleito". *SLG González-Figueroa v. SLG et al.*, *supra*, pág. 149. Además, la imposición de temeridad tiene el propósito de disuadir la litigación frívola, compensar los gastos sufridos por la otra parte y alentar las transacciones de los pleitos. Id., pág. 147.

Según el Tribunal Supremo, existe temeridad en las siguientes instancias: 1) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; 2) defenderse injustificadamente de la acción; 3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; 4) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad y 5) negar un hecho que le conste es cierto a quien hace la alegación. *C.O.P.R. v. S.P.U.*, 181 DPR 299, 342 (2011). La evaluación de si ha mediado o no temeridad recae sobre la sana discreción del tribunal sentenciador y sólo se intervendrá con ella en casos en que dicho foro haya abusado de tal facultad. *PR Fast Ferries et al. v. AAPP*, 2023 TSPR 121, 213 DPR ___ (2023).

Por el contrario, la temeridad es improcedente en aquellos litigios que contienen controversias complejas y novedosas aun no

resueltas en nuestra jurisdicción o cuando la parte concernida responde a lo que resulta ser una apreciación errónea del derecho. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013).

**III.**

Mediante su único señalamiento de error, la apelante argumentó que el TPI incidió al desestimar la *Demanda* incoada e imponer una partida de cinco mil ($5,000.00) dólares por temeridad. Alegó que, la *Sentencia* dictada ignoró por completo las disposiciones de nuestro ordenamiento que le impone responsabilidad al dueño de una estructura reparar la misma. Sostuvo que, el informe y el plano que presentó el Agrimensor estableció que el muro o verja en controversia le pertenecía a la parte apelada. A esto añadió que, el hecho de que la verja hubiese invadido parte de su propiedad no eximía al dueño de su obligación de reparar la misma. Por lo tanto, argumentó que conforme al Art. 323 del Código Civil derogado de 1930, 31 LPRA sec. 1241, no le correspondía a ella, sino a la parte apelada reparar dicha estructura.

Luego de un análisis de la prueba testifical y documental que las partes presentaron en la vista en su fondo que se celebró el 22 de noviembre de 2024, el TPI emitió el dictamen recurrido y realizó treinta y nueve (39) determinaciones de hechos las cuales adoptamos en su totalidad y procederemos a resumirlas. La presente controversia giró en cuanto la titularidad de un muro en alegado peligro de colapso que colindaba entre las propiedades de la señora Oliveras Sifre y la parte apelada, así como una reclamación por las angustias y traumas mentales derivadas de estas condiciones de peligrosidad. De los hechos probados surge que el Agrimensor en su contra-interrogatorio reconoció que el muro en controversia se encontraba parcialmente en ambas propiedades.[7]

---

[7] *Véase*, Determinación de Hecho Núm. 15 de la *Sentencia*, pág. 5 del apéndice del recurso.

Sin embargo, la apelante no presentó prueba alguna que estableciera la titularidad de dicha estructura. De igual forma, tampoco desfiló prueba respecto las condiciones físicas de la verja. Además, en su testimonio, la señora Oliveras Sifre no declaró sobre las condiciones de peligrosidad de la pared,[8] así como factores que pudieran afectar la estabilidad de esta gradualmente.

Conforme al precitado derecho, el Art. 800 del Código Civil de 2020, *supra*, dispone lo siguiente:

El propietario de un inmueble está obligado a mantener:

(a) los edificios para evitar su ruina;

[...]

Si no cumple con esta obligación, cualquier persona que tenga un interés legítimo puede exigir al propietario la reparación, la demolición, el corte o la adopción de medidas preventivas. Si el propietario no lo realiza, la autoridad puede hacerlo a su costa.

Como podemos observar, le corresponde a un propietario llevar a cabo los actos necesarios para evitar la ruina de sus edificaciones. Dicho esto, la prueba desfilada por la apelante fue insuficiente para probar que la parte apelada era propietaria del muro en controversia y menos que estos tuvieran la obligación de mantener la misma. Por otra parte, no presentó evidencia alguna que demostrara que la estructura estaba en un peligro de colapso. Por virtud de lo anterior, nos resulta forzoso concluir que la señora Oliveras Sifre no logró probar los elementos necesarios para presentar una causa de acción bajo el Art. 800 del Código Civil, *supra.*

A igual conclusión llegamos en cuanto a la reclamación por daños y perjuicios. Reiteramos que, a tenor con la jurisprudencia, para que una parte levante exitosamente una causa de acción por alegados daños y perjuicios debe probar (1) la existencia de un daño

---

[8] Id., Determinación de Hecho Núm. 26 de la *Sentencia*, pág. 6.

real; (2) el nexo causal entre el daño y el acto u omisión del demandado; y (3) demostrar que el acto u omisión es culposo o negligente. *Sucn. Mena Pamias et al. v. Meléndez et al., supra.* No obstante, la apelante no presentó prueba sobre acto u omisión culposo o negligente llevado a cabo por la parte apelada, ni desfiló prueba alguna sobre sus alegadas traumas y angustias mentales.[9] Además, tampoco presentó prueba sobre los alegados daños causados a la propiedad. Incluso, de los hechos surge que la señora Oliveras Sifre continuó utilizando la piscina junto con sus familiares aún después de haber radicado la *Demanda* en el presente pleito.[10]

Por último, la señora Oliveras Sifre alegó que, el TPI incidió al imponer una sanción de cinco mil ($5,000.00) dólares en honorarios de abogado por temeridad. Como es conocido, la temeridad es aquella conducta que promueve un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. *Maderas Tratadas v. Sun Alliance et al., supra.* Así, la determinación de temeridad recae en la sana discreción del tribunal sentenciador y solo se intervendrá con ella cuando se haya abusado de tal facultad. *PR Fast Ferries et al. v. AAPP, supra.* La apelante en su recurso no demostró que el TPI haya abusado de esta facultad discrecional. Ante ello, no encontramos razón para intervenir con la determinación de temeridad.

Por los motivos antes expuestos, determinamos que el TPI no cometió el error imputado por la señora Oliveras Sifre.

**IV.**

Por los fundamentos antes expuestos, **confirmamos** el dictamen recurrido.

---

[9] Id., Determinación de Hecho Núm. 29 y 38 de la *Sentencia,* págs. 6-7.
[10] Id., Determinación de Hecho Núm. 24 y 25 de la *Sentencia,* pág. 6.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones